Li v. Holder

UNITED STATES COURT OF APPEALS

FOR THE SECOND CIRCUIT

_____

August Term, 2011

(Argued: September 2, 2011      Decided: February 21, 2014)

Docket No. 10-274-ag

_____

FANG LI,

*Petitioner,*

—v.—

ERIC H. HOLDER, JR., ATTORNEY GENERAL OF THE UNITED STATES; JANET
NAPOLITANO, SECRETARY OF THE DEPARTMENT OF HOMELAND SECURITY,

*Respondents.*

_____

Before: KATZMANN, *Chief Judge,* LIVINGSTON, and CARNEY, *Circuit Judges.*

Petition for review of a decision of the Board of Immigration Appeals

("BIA") affirming the decision of the Immigration Judge ("IJ") to deny

petitioner's motion to reopen.  The petitioner contends that her final deportation

order is invalid because she should have been placed in exclusion proceedings, not deportation proceedings. Because, however, she concedes that she was deportable, we hold that the BIA did not abuse its discretion in affirming the IJ's denial of her motion to reopen. The petition for review is **DENIED**.

Chief Judge KATZMANN concurs in a separate opinion.

_____

Counsel for Petitioner Fang Li:    ALAN LEE, New York, N.Y.

Counsel for Respondents:    W. DANIEL SHIEH, Trial Attorney (Tony West, Assistant Attorney General; Francis W. Fraser, Senior Litigation Counsel, on the brief), Office of Immigration Litigation, Civil Division, United States Department of Justice, Washington, D.C.

_____

PER CURIAM:

Petitioner Fang Li, a native and citizen of the People's Republic of China, seeks review of a December 29, 2009 order of the BIA affirming the March 7, 2008 order of Immigration Judge ("IJ") Alan L. Page denying her motion to reopen. *In re Fang Li*, No. A070 896 796 (B.I.A. Dec. 29, 2009), *aff'g* No. A070 896 796 (Immig. Ct. N.Y. City Mar. 7, 2008). On appeal, Li contends that her prior deportation

-2-

proceedings are void *ab initio* because, she argues, exclusion proceedings at the port of entry were the only appropriate procedure for determining whether she could enter into and remain in the United States. Because, however, Li concedes that she is deportable, we conclude that the BIA did not abuse its discretion in affirming the IJ's denial of Li's motion to reopen.

## I. Background

Fang Li, a native and citizen of China, entered the United States in 1993 with a false Chinese passport. She attests that after customs officials discovered the false passport upon her arrival at JFK airport, she told them that she came to America to seek asylum. Li was released and given papers that she was told she could use to get a "work card." Li then went to Chinatown and gave these papers to an immigration service agency to obtain a work card.

In June 1993, Li applied for asylum and various other forms of relief based on her claim that she feared persecution under China's "one child" policy. She reports that she was called for an asylum interview that year at which the asylum officer did not ask her about the circumstances of her entry. She was placed into deportation proceedings in November 1996 by an order to show cause charging her with entering the U.S. without a valid visa or entry document, which

rendered her deportable. In 1998, she withdrew her application for relief from deportation and instead requested voluntary departure, thus conceding her deportability. The IJ granted her request for voluntary departure. Li asserts that the IJ presiding over the corresponding hearings never questioned her about the circumstances of her entry.

Although the voluntary departure order became final in November 1998, Li remained in the country. In February 2008, she moved before the immigration court to reopen, claiming that she was eligible to adjust her status based on, inter alia, (1) an I-130 petition filed by her U.S. citizen father and (2) the emotional hardship that her U.S. citizen daughter, who was born in 2000, would suffer if Li were to return to China. The IJ denied this motion as untimely and declined to exercise his authority to reopen *sua sponte*. In declining to reopen *sua sponte*, the IJ noted the facts that Li has close family ties in the United States and that her daughter was born after Li's deportation order became final, which in the IJ's view suggested that Li never intended to depart the United States.

Li appealed to the BIA, contending that the equities of her case favored reopening. Significantly to the instant petition for review, in her administrative appeal Li argued for the first time that the deportation proceedings brought

against Li were "null and void" from the outset. In Li's view, under the statutory framework applicable at the time of her entry, aliens like Li who are not admissible at the port of entry must be placed in exclusion proceedings, not deportation proceedings. Li further argued that the government's placement of her into deportation rather than exclusion procedures amounted to an error of "jurisdictional magnitude" and therefore was not waivable. The government did not file a responsive brief before the BIA.

In its December 29, 2009 order, the BIA adopted and affirmed the IJ's decision denying Li's motion to reopen for the purpose of applying for adjustment of status as untimely. The BIA also rejected Li's argument that her deportation proceedings were void because she should have been placed in exclusion proceedings instead of deportation proceedings. Finally, the BIA rejected Li's contention that the IJ should have reopened her deportation proceedings under his *sua sponte* authority. Li then petitioned to this Court for review.

II.    **Discussion**

"This court reviews the BIA's decision to affirm an IJ's denial of a motion to reopen for abuse of discretion." *Cekic v. INS*, 435 F.3d 167, 170 (2d Cir. 2006).

-5-

There is no dispute that Li's February 2008 motion to reopen was untimely because Li's voluntary departure order converted into a final deportation order when she failed to depart the United States by November 1998. *See* 8 U.S.C. §§ 1101(a)(47), 1229a(c)(7)(C)(i); 8 C.F.R. §§ 1003.2(c)(2), 1003.23(b)(1); *see also Mahmood v. Holder*, 570 F.3d 466, 469 (2d Cir. 2009). Li has not alleged that she meets any of the exceptions to the time and number limitations for motions to reopen. *See* 8 U.S.C. § 1229a(c)(7)(C)(ii)-(iv); 8 C.F.R. § 1003.23(b)(4).

Li nevertheless argues that her final deportation order is invalid because she should have been placed in exclusion proceedings. Li, however, conceded to the charge of deportability at her hearing before the IJ. She likewise did not attempt to terminate the proceedings until filing her motion to reopen over nine years after the deportation order became effective. See *Hoodho v. Holder*, 558 F.3d 184, 192-93 (2d Cir. 2009) (stating that absent a showing of "egregious circumstances," an alien is bound by his attorney's concession of removability).

Even assuming *arguendo* that Li's argument raises a "jurisdictional" issue not subject to waiver, the BIA did not err in finding her challenge to be "unavailing." At all times applicable to Li's deportation proceedings, deportable aliens included "[a]ny alien in the United States," 8 U.S.C. § 1251(a), "who at the

time of entry . . . was within one or more of the classes of aliens excludable by the law existing at such time," *id.* § 1251(a)(1)(A) (1994). It is undisputed that Li lacked valid documentation to enter the United States and was therefore excludable pursuant to 8 U.S.C. § 1182(a)(7)(A)(i)(I) (1994). Accordingly, the BIA did not abuse its discretion in affirming the IJ's denial of Li's untimely motion to reopen.

We have considered Li's remaining arguments and find them to be without merit. We note, for the record, that after this Circuit issued its decision in *In re Immigration Petitions for Review Pending in the U.S. Court of Appeals for the Second Circuit* ("*Si v. Holder*"), 702 F.3d 160, 160 (2d Cir. 2012), we requested that the government review Li's case, determine if she was likely to be deported, and decide if her case should instead be remanded to the BIA. The government informed us that the Department of Homeland Security's Immigration and Customs Enforcement component deems Li to be a "low enforcement priority." Although the government had raised the possibility of remand with Li's counsel on two separate occasions, the petitioner rejected the offer to remand to the BIA in favor of proceeding to judgment on the merits—a rejection that is to us unfathomable in view of the weak legal arguments presented by petitioner's

counsel. Following *Si*, we proceed to judgment where the petitioner chooses to seek a decision on the merits rather than avail herself of the procedure *Si* outlines for remand to the BIA for possible administrative closure. Because the petitioner here asks us to decide the case on the merits, we deny the petition for review.

## III.    Conclusion

Accordingly, for the foregoing reasons, the petition for review is **DENIED**.

KATZMANN, *Chief Judge*, concurring:

The remand process set forth in *Si v. Holder* was designed in part to prevent the wasteful allocation of judicial resources to cases where the petitioner is unlikely to be removed promptly. *See In re Immigration Petitions for Review Pending in the U.S. Court of Appeals for the Second Circuit* ("*Si v. Holder*"), 702 F.3d 160, 160–61 (2d Cir. 2012). In particular, we were concerned that the thousands of petitions for review for cases where removal was unlikely "undermine[d] the Court's ability to allocate effectively its limited resources and determine whether adjudication of the petition will merely be an empty exercise tantamount to issuing an advisory opinion." *Id.* (quotation marks omitted). Under the procedures worked out in *Si*, an "interested petitioner" has to agree to remand her case to the BIA for the possible exercise of prosecutorial discretion and administrative closure. *Id.* at 161–62 (explaining how petitioner could move to dismiss the petition in favor of remand pursuant to Fed. R. App. Proc. 42(b)). By all accounts, the *Si* process has worked well for petitioners, the government, and this Court.

Accordingly, following the procedures contemplated by *Si*, we address the merits in this case because the petitioner has chosen not to avail herself of the

1

possibility for administrative closure and the government, in light of the petitioner's position, feels compelled to ask us to resolve the case. Our opinion is in all likelihood akin to an advisory opinion, because the government has told us that there is little chance Ms. Li will actually be removed from this country. In *Si* we declined to decide, "for the time being, the question of our inherent power to remand cases to the BIA as an exercise of our authority to manage the Court's affairs." *Id.* at 161. This case suggests that the time may well have arrived to consider whether such authority exists, at least with respect to cases in the unusual posture this one is.